UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> SHIRLEY A. BUCHANAN, a/k/a SHIRLEY A. BROOKS, <br><br> Defendant | Criminal No. 21cr10088 <br><br> Violations: <br><br> Count One: Theft of Government Money (18 U.S.C. § 641) <br><br> Counts Two - Seven: Wire Fraud (18 U.S.C. § 1343) <br><br> Forfeiture Allegation: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1. Defendant SHIRLEY A. BUCHANAN, a/k/a SHIRLEY A. BROOKS ("BUCHANAN") was a resident of Massachusetts.

2. The Social Security Administration ("SSA") is an agency of the federal government that, among other things, assigns Social Security numbers ("SSNs") and administers several benefit programs to the American public, including Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.

3. DIB are paid to those individuals who have a medical condition that renders them unable to work. The medical condition must be expected to last one year or result in death. In order to be eligible for DIB, in addition to having a disabling medical condition, the individual must satisfy an earnings requirement. More specifically, the individual must have worked for a certain period of time and paid Social Security taxes on their earnings. An individual's earnings are tracked according to their unique SSN.

4.  SSI benefits are paid to individuals who are 65 or older, are blind, or who have a medical condition that renders them unable to work. The medical condition must be expected to last one year or result in death. In addition, the individual must have limited income and resources. The individual must disclose all resources and sources of income in order for SSA to determine if the individual is eligible for SSI and, if so, the proper amount of the benefit. SSA conducts redeterminations with SSI recipients on a periodic basis to review the non-medical eligibility requirements for SSI, namely, living arrangement, income, and resources. The redeterminations insure that recipients remain eligible for SSI and are receiving the proper benefit amount.

5.  The Department of Transitional Assistance ("DTA") is an agency of the Commonwealth of Massachusetts responsible for, among other things, administering Supplemental Nutritional Assistance Program ("SNAP") benefits. SNAP benefits are monthly benefits paid to low-income individuals to help them purchase nutritious foods. In order to determine an individual's eligibility for, and amount of, SNAP benefits, the individual must report all sources of income to the DTA. This includes any wages as well as any unearned income, including DIB and SSI benefits.

6.  The Bay State Combined Application Project ("CAP") is a collaboration between SSA, the U.S. Department of Agriculture, and the Massachusetts DTA that allows applicants for SSI benefits to apply for SNAP benefits at the same time without the need to visit a DTA office.

7.  On or about June 25, 1968, BUCHANAN filed an application with SSA for an SSN under the name Shirley A. Brooks ("Brooks"). SSA assigned SSN xxx-xx-9809. On or

about March 3, 1975, BUCHANAN filed a second application for an SSN under the name SHIRLEY A. BUCHANAN. SSA assigned SSN xxx-xx-1059.

8. BUCHANAN applied for SSI benefits from SSA using the Brooks name and the SSN xxx-xx-9809 in or about June 1976. BUCHANAN applied for DIB from SSA using the Brooks name and the SSN xxx-xx-9809 in or about June 1979. SSA approved the applications and BUCHANAN began receiving DIB and SSI payments using the Brooks name and the SSN xxx-xx-9809 beginning in or about June 1979.

## Scheme to Defraud

9. From at least in or about March 1993 through in or about April 2020, BUCHANAN engaged in a scheme to defraud the SSA and DTA by applying for and receiving public assistance benefits, including SSI and SNAP benefits, using two different names and two different SSNs.

### SSA

10. In March 1993, while receiving DIB and SSI benefits from SSA under the Brooks name, BUCHANAN applied for and obtained SSI benefits with SSA using the BUCHANAN name and the SSN xxx-xx-1059. At the time of her application, BUCHANAN did not inform SSA that she was receiving DIB and SSI benefits under the Brooks name and the SSN xxx-xx-9809. Had BUCHANAN informed SSA that she was receiving DIB and SSI benefits under the Brooks name, SSA would have denied BUCHANAN's request for SSI benefits.

11. During nine reevaluations for her SSI benefits, from in or about July 1994 through in or about March 2014, BUCHANAN falsely reported to SSA that she did not have any other income. In fact, BUCHANAN was receiving DIB under the Brooks name during that entire time

and was receiving SSI benefits under the Brooks name until April 2012. As a result, from in or about March 1993 through in or about November 2018, BUCHANAN caused SSA to issue to her approximately $206,005.65 in SSI benefits that she was not entitled to receive.

*DTA-SNAP Benefits*

12. Beginning in or about July 2004, as a result of receiving SSI, BUCHANAN began to receive SNAP benefits from DTA under the SSN xxx-xx-1059. As of the date of this Indictment, BUCHANAN continues to receive SNAP benefits under that name and SSN.

13. On or about February 24, 2012, while receiving SNAP benefits under the SSN xxx-xx-1059, BUCHANAN applied for and subsequently obtained SNAP benefits from DTA using the Brooks name and the SSN xxx-xx-9809. In her application, BUCHANAN did not report either (a) the SNAP benefits she was receiving under the BUCHANAN name, or (b) the monthly SSI benefits she received from SSA in the BUCHANAN name. In or about March 2013, DTA terminated the payment of SNAP benefits in the Brooks name because BUCHANAN did not provide proof of Massachusetts residency within the designated timeframe.

14. On or about July 10, 2014, BUCHANAN again applied for SNAP benefits using the Brooks name and the SSN xxx-xx-9809. Again, BUCHANAN did not report (a) the SNAP benefits she was receiving under the BUCHANAN name or (b) the monthly SSI benefits she received from SSA in the BUCHANAN name. On or about August 11, 2014, DTA reinstated SNAP benefits in the Brooks name. DTA terminated the payment of SNAP benefits in the Brooks name in or about June 2018 because she did not complete the required reevaluation process within the designated timeframe.

15. On or about July 17, 2018, BUCHANAN submitted a third application for SNAP benefits using the Brooks name and the SSN xxx-xx-9809. Again, BUCHANAN did not report (a) the SNAP benefits she was receiving under the BUCHANAN name or (b) the monthly SSI benefits she received from SSA under the BUCHANAN name. On or about August 7, 2018, DTA reinstated SNAP benefits in the Brooks name. DTA terminated the payment of SNAP benefits in the Brooks name in or about April 2020 because the benefits were consistently used outside of the Commonwealth of Massachusetts.

16. From in or about February 2012 through in or about April 2020, BUCHANAN caused the DTA to issue to her approximately $12,916.89 in SNAP benefits under the Brooks name that she was not entitled to receive.

## COUNT ONE
## Theft of Government Money
## (18 U.S.C. § 641)

The Grand Jury charges:

17. The Grand Jury re-alleges and incorporates by reference paragraphs 1-11 of this Indictment.

18. From in or about March 1993 through in or about November 2018, in the District of Massachusetts, and elsewhere, the defendant,

SHIRLEY A. BUCHANAN, a/k/a SHIRLEY A. BROOKS,

did, on a recurring basis, knowingly and willfully embezzle, steal, purloin, and convert to her use and the use of another, any money and thing of value of the United States and of any department and agency thereof, in a total amount greater than $1,000, namely, Social Security benefits.

All in violation of Title 18, United States Code, Section 641.

## COUNTS TWO - SEVEN
### Wire Fraud
### (18 U.S.C. § 1343)

The Grand Jury further charges:

20. The Grand Jury re-alleges and incorporates by reference paragraphs 1-16 of this Indictment.

21. On or about the dates set forth below, in the District of Massachusetts, and elsewhere, the defendant,

SHIRLEY A. BUCHANAN, a/k/a SHIRLEY A. BROOKS,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 2 | April 29, 2016 | Electronic deposit of SSI benefits into checking account at Leader Bank in Arlington, Massachusetts for Shirley BUCHANAN |
| 3 | May 7, 2016 | Purchase at Market Basket in Woburn, Massachusetts using Electronic Benefits Transfer card issued to Shirley Brooks |
| 4 | August 1, 2017 | Electronic deposit of SSI benefits into checking account at Leader Bank in Arlington, Massachusetts for Shirley BUCHANAN |
| 5 | May 26, 2018 | Purchase at Market Basket in Woburn, Massachusetts using Electronic Benefits Transfer card issued to Shirley Brooks |
| 6 | October 1, 2018 | Electronic deposit of SSI benefits into checking account at Leader Bank in Arlington, Massachusetts for Shirley BUCHANAN |

| 7 | November 30, 2018 | Purchase at Star Market in Cambridge, Massachusetts using Electronic Benefits Transfer card issued to Shirley Brooks |

All in violation of Title 18, United State Code, Section 1343.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

22. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 641, and in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Seven, the defendant,

SHIRLEY A. BUCHANAN a/k/a SHIRLEY A. BROOKS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following asset:

    a. $218,922.54, to be entered in the form of a forfeiture money judgment;

23. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
KAREN B. BURZYCKI
SPECIAL ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: MARCH 24th, 2021
Returned into the District Court by the Grand Jurors and filed.

Dawn M. King    4:04pm
DEPUTY CLERK